# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA
# SOUTH BEND DIVISION

| | |
|---|---|
| YVETTE N. McCLINTON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) CAUSE NO. 3:19-CV-003-PPS |
| | ) |
| NANCY A. BERRYHILL, | ) |
| Acting Commissioner of the Social Security | ) |
| Administration, | ) |
| | ) |
| Defendant. | ) |

## **OPINION AND ORDER**

Yvette McClinton appeals the Social Security Administration's decision to deny her applications for disability insurance benefits and supplemental security income under Title II and XVI of the Social Security Act. McClinton suffers from several medical issues including degenerative joint disease of the hip, diabetic neuropathy, and obesity. [Tr. 14.][1] An administrative law judge found that McClinton was not disabled and that she had the residual functional capacity (RFC) to perform light work with some restrictions.

McClinton alleges five claims of error by the ALJ but I will limit my discussion to one: whether the ALJ failed to properly weigh the medical opinion evidence.[2] Because I

---

[1] Citations to the record will be indicated as "Tr. __" and indicate the pagination found in the lower right-hand corner of the record found at DE 10.

[2] The other claims are that the ALJ erred in evaluating Listing 1.02; the ALJ erred in assessing McClinton's RFC; the ALJ erred in evaluating McClinton's subjective allegations and failed to consider her impairments in combination; and remand is required because the ALJ was not constitutionally appointed.

find the ALJ's analysis of the medical opinion evidence is flawed, I will **REVERSE** the ALJ's decision and **REMAND** on this issue.

## Discussion

Let's start by looking at the legal framework. My role is not to determine from scratch whether or not McClinton is disabled. Rather, I only need to determine whether the ALJ applied the correct legal standards and whether the decision is supported by substantial evidence. *See* 42 U.S.C. § 405(g); *Shideler v. Astrue*, 688 F.3d 306, 310 (7th Cir. 2012); *Castile v. Astrue*, 617 F.3d 923, 926 (7th Cir. 2010); *Overman v. Astrue*, 546 F.3d 456, 462 (7th Cir. 2008). My review of the ALJ's decision is deferential. This is because the "substantial evidence" standard is not particularly demanding. In fact, the Supreme Court announced long ago that the standard is even less than a preponderance-of-the-evidence standard. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). Of course, there has to be more than a "scintilla" of evidence. *Id.* This means that I cannot "simply rubber-stamp the Commissioner's decision without a critical review of the evidence." *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000). Nonetheless, the review is a light one and the substantial evidence standard is met "if a reasonable person would accept it as adequate to support the conclusion." *Young v. Barnhart*, 362 F.3d 995, 1001 (7th Cir. 2004).

The ALJ found that McClinton had the severe impairments of moderate degenerative joint disease changes of the right hip, mild degenerative joint disease of the left hip, osteoarthritis, insulin-dependent diabetes, diabetic neuropathy, obesity,

2

patellar hypertrophy of the right knee, and an adjustment disorder with depressed mood. [Tr. 14.] McClinton suffers from multiple other non-severe impairments, including gastritis, small hiatal hernia, irritable bowel syndrome, hypertension, early endplate spurring of the thoracic spine, and back pain. [Tr. 15.] The ALJ determined that McClinton had the RFC:

> to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) where the claimant can sit for six hours of an eight-hour workday, and stand and/or walk for two hours of an eight-hour workday. The claimant can occasionally lift 20 pounds, and frequently lift 10 pounds. The claimant requires an assistive device to walk, but not to stand. The claimant can carry with the non-cane bearing arm. The claimant must avoid climbing ladders, ropes, and scaffolds. The claimant can occasionally balance, stoop, kneel, crouch, and crawl. The claimant is precluded from concentrated exposure to hazardous conditions. The claimant is limited to simple repetitive tasks performed in non-public settings with no more than occasional contact with coworkers and supervisors.

[Tr. 17.]

In analyzing whether this RFC is proper, my focus will be on the ALJ's handling Dr. John Kelly, McClinton's long-time treating physician. First, I will briefly review the medical evidence in the record, concentrating on those facts particularly pertinent to Dr. Kelly's opinion. In November 2015, Dr. Kelly drafted a medical source statement. By that point in time, Dr. Kelly had been treating McClinton for nearly seven years. [Tr. 492-99.] Dr. Kelly checked boxes on the relevant form, but he also wrote a significant amount of handwritten notes on it as well. Dr. Kelly opined that McClinton was limited to lifting 10 pounds or less occasionally, that she could sit no more than 4 hours in a workday with sitting at one time for 45-60 minutes, and that she could stand/walk

3

at least two hours in a workday and with 10-15 minutes at one time with a cane to stabilize her gait. [Tr. 494-95.]

The ALJ made the following two main comments about Dr. Kelly's medical source statement:

> I give Dr. Kelly's opinion some weight, but not great weight, as it is inconsistent with the totality of the evidence. I recognize that the claimant requires a cane but do not agree that she is limited to lifting only 10 pounds from waist level as a 10 pound restriction is not supported by the objective findings. . . . As for the opinion evidence, I grant little weight to the opinion of Dr. John Kelly, who completed a medical source statement. (Ex. 8F). His opinion is not generally consistent with the medical evidence of record, including the evaluation of Dr. Gillespie in March 2017. (Ex. 17F/5).

[Tr. 19-20, 22.]

There are a few problems with this lean assessment of Dr. Kelly's opinion. First, the ALJ does not describe *how* Dr. Gillespie's evaluation on March 14, 2017, is inconsistent with Dr. Kelly's opinion. Dr. Gillespie's notes state that McClinton reported that she has had joint pain for 10 years and she was "in extreme pain now." [Tr. 922.] McClinton told Dr. Gillespie that her knees pop in and out of their sockets, her hands spasm, her feet turn out, she has noticed swelling in her feet and hands, she reports morning stiffness that lasts 30 minutes, her worst areas of pain include her knees, feet and hands, she has tried Indocin without relief, she has numbness and tingling in her hands and feet, and she has been diabetic for the past 13 years. [*Id.*] Dr. Gillespie also recorded that McClinton's symptoms included "nausea with vomiting 1 x per day" and GERD. [*Id.*] Dr. Gillespie's exam included a musculoskeletal exam that

4

showed full range of motion in the upper extremities with no swollen or tender joints in her hands or feet. [Tr. 924.] But it also showed left SI joint tenderness, decreased external rotation at hips worse on the right, and mild crepitus at the knees. [*Id.*]

Dr. Gillespie arrived at the following assessment: "[McClinton] has neuropathic symptoms in her hands and feet. . . . I think her symptoms are more consistent with neuropathy than arthritis. However, she does have some hip and knee pain." [Tr. 924.] Dr. Gillespie then recommended imaging her most symptomatic joints and the joints that were not functioning normally. [*Id.*] She also noted that x-rays showed osteoarthritis changes in both hips, and right medial joint space narrowing of the knee and patella hypertrophy on the right. [*Id.*] X-rays of the hands and feet were within normal limits. [*Id.*] Dr. Gillespie recommended trying Celebrex 200 mg daily. [*Id.*]

The ALJ discounted treating physician Dr. Kelly's medical assessment "because it was not generally consistent with the medical evidence of record, including the evaluation of Dr. Gillespie in March 2017." [Tr. 22.] But because the ALJ did not articulate or explain *why* she believes Dr. Gillespie's evaluation is inconsistent with Dr. Kelly's assessment, I am left with holes in the logic and wondering how the ALJ reached this opinion. It is by now well settled that when an ALJ recommends that the Agency deny benefits, the ALJ must "provide a logical bridge between the evidence and [her] conclusions." *Terry v. Astrue*, 580 F.3d 471, 475 (7th Cir. 2009) (internal quotation marks and citation omitted). While it is certainly true that an ALJ need not discuss every snippet of evidence in the record, I can't say that the ALJ provided a logical bridge

between Dr. Kelly's opinion and the ALJ's RFC which gives McClinton much more capability (finding she can sit for six hours of a workday, stand and/or walk for two hours, occasionally lift 20 pounds, and frequently lift 10 pounds).

The ALJ might have thought that Dr. Kelly's opinion was undercut by Dr. Gillespie's note that McClinton did not have swollen or tender joints in her hands or feet and the x-rays of the hands and feet were normal, but to conclude that would be to speculate how the ALJ reached her conclusion. *See Clifford*, 227 F.3d at 869 ("we review the entire administrative record, but do not reweigh the evidence, resolve conflicts, decide questions of credibility, or substitute our own judgment for that of the Commissioner."). Moreover, the unremarkable x-rays could be consistent with Dr. Gillespie's belief that McClinton was suffering from neuropathy instead of arthritis, and thus not seemingly in conflict with Dr. Kelly's assessment of McClinton. [Tr. 924.] I'm not a doctor, though, and I cannot reach these types of conclusions by myself. The ALJ should have articulated a clearer reason for why she believed Dr. Gillespie's exam was inconsistent with Dr. Kelly's assessment.

Aside from the lack of detail explaining why the ALJ discounted Dr. Kelly's opinion, the other main problem is the ALJ did not properly analyze the opinion of the treating physician.[3] Both the regulations and good sense require ALJs to give more

---

[2] The treating physician rule was abrogated for claims filed after March 27, 2017, and eliminates the "controlling weight instruction." *McFadden v. Berryhill*, No. 17-1597, 2018 WL 317282, at *3 n.1 (7th Cir. Jan. 8, 2018). However, because McClinton filed her claim in May 2015, the treating physician rule is still in effect for McClinton's claims.

weight to opinions from medical sources who have examined and have a treating relationship with the claimant. *See* 20 C.F.R. § 404.1527(c)(1) and (2). A treating physician's opinion is entitled to controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and is not inconsistent with other substantial evidence in the record. 20 C.F.R. §§404.1527(c)(2), 416.927(c)(2); s*ee also Gerstner v. Berryhill*, 879 F.3d 257, 261 (7th Cir. 2018). An ALJ is free to discount the treating physician's opinion, but she must provide "good reasons" to explain the weight given to the opinion and support these reasons with evidence. SSR 96-2p, 1996 WL 374188 (July 2, 1996); *Scott v. Astrue*, 647 F.3d 734, 739 (7th Cir. 2011).

Here, the ALJ did not provide enough detail or supporting evidence about why she largely rejected Dr. Kelly's opinion. Indeed, instead of providing "good reasons" for the rejection of the treating doctor in this case, the ALJ gave no reasons at all. What the ALJ gave here was a conclusion – Dr. Kelly was being rejected because it was inconsistent with the opinion of Dr. Gillespie. But a conclusion isn't a reason, let alone a good reason. *See Walker v. Berryhill*, 900 F.3d 479, 485 (7th Cir. 2018) (the ALJ needed to offer a good reason for disregarding the claimant's treating physician); *Stacy A. v. Berryhill*, No. 17 C 6581, 2019 WL 1746207, at *5 (N.D. Ill. Apr. 18, 2019) (quotation omitted) ("If an ALJ discounts a treating physician's opinion because it is inconsistent with the evidence, she must explain the inconsistency.").

Additionally, "[i]f an ALJ does not give a treating physician's opinion controlling weight, the regulations *require* the ALJ to consider the length, nature, and extent of the

7

treatment relationship, frequency of examination, the physician's specialty, the types of tests performed, and the consistency and supportability of the physician's opinion." *Moss v. Astrue,* 555 F.3d 556, 561 (7th Cir. 2009) (emphasis added) (citation omitted); *Mueller v. Astrue*, 493 F. App'x 772, 776-77 (7th Cir. 2012) (remanding ALJ decision that did not consider the checklist of factors). "[A]n ALJ must consider the factors found in 20 C.F.R. § 416.927(c), but need only 'minimally articulate' [her] reasoning; the ALJ need not explicitly discuss and weigh each factor." *Collins v. Berryhill*, 743 F. App'x 21, 25 (7th Cir. 2018) (citing *Elder v. Astrue*, 529 F.3d 408, 415-16 (7th Cir. 2008)).

In this case, the ALJ did not explain if or how she considered *any* of the relevant treating physician factors. Recall that Dr. Kelly had been treating McClinton for nearly seven years by the time he gave his opinion. Yet this lengthy treating history was ignored by the ALJ. [Tr. 499.] What's more, the ALJ did not articulate the nature of the treatment, or explain with enough detail the consistency or supportability of Dr. Kelly's opinion compared to other things in the record. Although the Commissioner argues that the ALJ considered and discussed McClinton's treatment notes throughout her decision, the "weight given to a treating physician cannot be implied: the decision must be sufficiently specific to make clear to any subsequent reviewers the weight the ALJ gave to the treating source's medical opinion and the reasons for that weight." *David v. Barnhart*, 446 F.Supp.2d 860, 871 (N.D. Ill. 2006).

And there is some evidence of supportability and consistency for Dr. Kelly's opinion in the record. Dr. Kelly didn't phone it in by simply checking some boxes on a

8

form. Instead, Dr. Kelly supported his medical source statement with a handwritten, detailed review of the evidence and citations to office visit notes and imaging reports supporting his findings and conclusions. [Tr. 495-96.] Dr. Kelly cited McClinton's multiple health conditions, including chronic pain, type two diabetes, and obesity, plus noted x-rays from March 23, 2014, showing moderate to advanced degree of osteoarthritic changes to both knees with mild subluxation of the right patella. [Tr. 496.] Dr. Kelly also noted an endoscopy from June 2015 done for abdominal pain, nausea, and vomiting, which showed severe helicobacter pylori associated with active gastritis and focal intestinal metaplasia. [*Id.*] And, he cited bilateral hip x-rays from September 2015 that showed mild to moderate osteoarthritis and CT of the pelvis showing cystitis and fatty infiltration of the liver with a small umbilical hernia. [*Id.*] This evidence seems like it could be consistent with Dr. Kelly's assessment. Finally, there are several other consultative exams in the record, including state agency medical consultants Dr. Gange and Dr. Brill, that the ALJ granted "great weight" to their opinions, but the ALJ failed to compare Dr. Kelly's opinion to those of the consultative examiners, or review the consistency of these opinions. [Tr. 23.]

All of this is not harmless error. A different weighing of Dr. Kelly's opinion could result in a different finding of the amount of weight McClinton could lift and the frequency of the lifting, as well as her standing and sitting requirements for the RFC. On remand, the ALJ should reevaluate the opinion of treating physician Dr. Kelly. If the ALJ again determines that his opinion is not entitled to controlling weight, the ALJ

should make sure to address the various factors set forth in 20 C.F.R. § 416.927 in assessing the weight to afford Dr. Kelly's opinion.

* * *

Because I am remanding this case for the reasons stated above, I need not discuss the remaining four issues raised by McClinton. She can raise those issues directly with the ALJ on remand.

## Conclusion

For the reasons set forth above, the Commissioner of Social Security's final decision is REVERSED and this case is REMANDED to the Social Security Administration for further proceedings consistent with this opinion.

ENTERED: October 9, 2019.

    /s/ Philip P. Simon
PHILIP P. SIMON, JUDGE
UNITED STATES DISTRICT COURT